UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LESSIE R. LINDSEY,

    Plaintiff,

  v.                                                  Case No. 19-CV-1459

ANDREW M. SAUL,
**Commissioner of Social Security,**

    Defendant.

---

## DECISION AND ORDER

---

Lessie R. Lindsey seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claims for a period of disability and disability insurance benefits ("DIB") and a Title XVI application for supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. § 405(g). For the reasons explained below, the Commissioner's decision is affirmed and the case is dismissed.

## BACKGROUND

On May 22, 2017, Lindsey filed applications for a period of disability and disability insurance benefits and for supplemental security income, alleging disability beginning June 6, 2017 (Tr. 13) due to back pain, leg pain, neck pain, and balancing issues (Tr. 230). Lindsey's applications were denied initially and upon reconsideration. (Tr. 13.) Lindsey filed a request for a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on October 10, 2018. (Tr. 29–61.) Lindsey testified at the hearing, as did Robert Verkins, a vocational expert ("VE"). (Tr. 29.)

In a written decision issued January 8, 2019, the ALJ found that Lindsey had the severe impairments of cervical and lumbar degenerative disc disease, asthma, migraines, obstructive sleep apnea, hypertension, and obesity. (Tr. 15.) The ALJ further found that Lindsey did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 17–18.) The ALJ found that Lindsey had the residual functional capacity ("RFC") to perform light work, with the following exceptions: able to frequently push and pull with the bilateral upper extremities, but only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes or scaffolds; able to frequently handle and finger bilaterally, but must avoid more than occasional exposure to extreme cold, vibrations, dust, fumes, odors, gases, poor ventilation, and other pulmonary irritants; and must avoid more than occasional exposure to hazards such as unprotected heights and dangerous moving machinery. (Tr. 18.)

The ALJ found that Lindsey was capable of performing her past relevant work as a checking clerk. (Tr. 22.) Alternatively, the ALJ found that given Lindsey's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform. (Tr. 22–23.) As such, the ALJ found that Lindsey was not disabled from her alleged onset date until the date of the decision. (Tr. 23.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Lindsey's request for review. (Tr. 1–6.)

# DISCUSSION

## *1.  Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## *2.  Application to this Case*

Lindsey argues that the ALJ erred in determining that she could perform light exertional work. Specifically, she argues that the ALJ limited his evaluation of Lindsey's allegations to the treatment records and failed to consider other relevant factors, failed to

3

articulate why the evidence supported the standing and walking abilities required by light work, and improperly dismissed the statements of Lindsey's husband. (Pl's Br. at 3, Docket # 13.)

By way of background, Lindsey previously unsuccessfully applied for DIB and SSI benefits, alleging a disability onset date of November 28, 2012. (Tr. 64.) A hearing was held in that case on May 19, 2016. Lindsey acknowledges that this hearing testimony was not before the ALJ in the present case. (Pl.'s Br. at 1 n.1, citing Tr. 25–28.) The testimony from this hearing, however, serves as the bulk of Lindsey's argument for remand. At the May 2016 hearing, a medical expert testified, opining that due to Lindsey's knee pain and mobility issues, she should be reduced to sedentary exertional work. (Tr. 85.) The VE at this hearing testified that an individual with the same limitations as the ALJ assigned, but who was also limited to sedentary work, would not be able to perform the only sedentary job to which Lindsey had transferrable skills. (Tr. 59.) At the time of the May 2016 hearing, however, Lindsey was 48 years old (DOB June 6, 1967), and a "younger individual" under SSA regulations. 20 C.F.R. § 1563(c). Under the Medical-Vocational Guidelines (commonly known as the Grid), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00, *et seq.*, as a "younger individual," a sedentary RFC finding did not trigger a finding of disability.

In this case, Lindsey amended her onset date to correspond to her 50th birthday. (Tr. 31, Pl.'s Br. at 1.) Lindsey did so, presumably, because now at 50 years old, she is a person "closely approaching advanced age." 20 C.F.R. § 404.1563(d). A person "closely approaching advanced age," who is limited to sedentary work, has a high school education, and has no transferable skills, is disabled under the Grid. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.14. The same individual limited to light work, however, is not disabled under the Grid. *See id.* §

4

202.14. Lindsey argues that "[a]t her age two years later, the grid rules would require a finding of disabled with a sedentary RFC. Yet, the agency and the ALJ now determined Lindsey could perform of [sic] a range of light work." (Pl.'s Br. at 2.)

Although Lindsey's confusion is understandable, the ALJ specifically stated that he was not bound by any previous determinations and that he would make a "new and independent decision based on the evidence before [him]." (Tr. 31–32.) Again, Lindsey acknowledges that the ALJ did not have her previous hearing transcript or the findings of the medical expert in her previous case before him. (Pl.'s Br. at 1 n.1, citing Tr. 25–28.) Thus, the ALJ cannot be faulted for any inconsistency between the previous RFC determination and his determination.

Lindsey makes several attacks on the ALJ's RFC finding of light exertional work. First, she argues that the ALJ erred because he stated that her "allegations of a disabling condition are not fully consistent with her treatment notes." (Pl.'s Br. at 10, citing Tr. 22.) Lindsey argues that this means the ALJ *only* considered her treatment notes in evaluating her allegations of disabling symptoms. (*Id.*) She argues the ALJ failed to sufficiently consider her daily activities and the side effects of her medication. (*Id.* at 13–16.) This is simply inaccurate. The ALJ recounted and considered her stated difficulties with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and climbing. (Tr. 18.) He considered Lindsey's husband's statements regarding her difficulty tending to her personal care, preparing meals, performing household chores, and driving. (Tr. 19.) The ALJ rejected both Lindsey's and her husband's statements regarding the severity of her disabling symptoms because although her physical examinations showed tenderness and a diminished range of motion, she was able to

5

ambulate normally and retained good strength. (*Id.*) The ALJ did not, as Lindsey suggests, "ignore [an] entire line of evidence." (Pl.'s Br. at 14.)

Lindsey further argues the ALJ ignored her testimony regarding side effects from her medications, instead citing to two records where she reported no side effects. (Pl.'s Br. at 15, citing Tr. 20–21.) Lindsey specifically criticizes the ALJ's alleged failure to account for her drowsiness and fatigue in her RFC, speculating that it could "bear on Lindsey's ability to perform work on her feet." (*Id.* at 16.) While Lindsey does testify that her medications cause some drowsiness and fatigue (Tr. 40), her testimony is contrary to the medical records where Lindsey frequently denied suffering from any medication side effects (Tr. 257, 286, 314, 465, 554, 633). Furthermore, her treating physician, Dr. Francis McCann, attributed her fatigue to her "weight and sedentary lifestyle," (Tr. 649), not to her medications. Thus, it is unclear how the ALJ erred in not specifically citing Lindsey's testimony that her medications caused fatigue. The ALJ specifically accounted for her fatigue causing conditions—obesity and sleep apnea—in her RFC. (Tr. 19, 21.)

Lindsey further argues that the ALJ failed to explicitly explain his finding that she was able to perform the standing and walking requirements of light work. (Pl.'s Reply Br. at 8, Docket # 19.) Lindsey faults the ALJ for relying on the opinions of the State agency physicians that she was capable of light work, stating that: "Yes, the ALJ found the state agency opinions persuasive, but his discussion of them was merely a list of competing medical findings without any indication of how a finding of standing or walking for six out of eight hours was consistent with or supported by the medical record." (*Id.* at 7.)

The ALJ's rationale for limiting Lindsey to light exertional work is clear. The record supports that Lindsey's cervical and/or lumbar range of motion was often diminished and

6

her back was painful to palpation. (Tr. 339, 469, 483, 486–87, 493–94, 497–98, 511–12, 558, 607, 641.) However, these same records also show normal strength in the lower extremities and a normal gait. In opining Lindsey could perform light exertional work, both State agency physicians on the initial and reconsideration levels considered this evidence in making their determinations. (Tr. 100–01, 107, 110–12.) The ALJ cited the medical evidence, as well as the State agency physicians' opinions, in limiting Lindsey to light exertional work. (Tr. 19–22.) What more explanation does Lindsey seek from the ALJ? Presumably if the ALJ limited Lindsey to light work based on his own interpretation of the medical evidence, rather than on the opinions of the State agency physicians, Lindsey would argue he was "playing doctor." Thus, it is unclear how the ALJ erred in relying on the opinion of the State agency physicians, who considered the medical evidence and determined that despite her pain and reduced range of motion, she could still stand and/or walk for six out of eight hours. Lindsey points to no evidence the ALJ failed to consider or competing medical opinion showing a limitation to sedentary work. Thus, the ALJ did not err in this regard.

    Finally, Lindsey argues the ALJ erred in weighing the opinion of her husband, who offered observations regarding her daily activities that were generally consistent with Lindsey's own statements. She argues that the ALJ erred because he stated that Lindsey's husband's observations were not persuasive because they "[did] not address specific limitations." (Pl.'s Reply Br. at 9, citing Tr. 19.) Lindsey contends that because her husband's statements are the lay observations of a third-party, not medical opinion evidence, whether he set forth specific functional limitations is irrelevant to the weight given the statements. (*Id.*)

7

Case 2:19-cv-01459-NJ   Filed 02/25/21   Page 7 of 9   Document 20

I agree that Social Security Ruling 16-3p tasks the ALJ with considering the consistency of a non-medical source's personal observations with the claimant's statements and the evidence in the file. Thus, whether her husband, as a lay observer, discusses "specific limitations" is not a valid reason for discounting the lay opinion. Any error, however, on the ALJ's part is harmless. The ALJ did not discount Lindsey's husband's statements solely on that ground. Rather, the ALJ explained that her husband's observations should be considered given his personal relationship with Lindsey, but discounted his reports due to its inconsistency with the evidence in the file, specifically, Lindsey's ability to ambulate normally and retained muscle strength, despite her diminished range of motion and tenderness on palpation. (Tr. 19.) This analysis comports with SSR 16-3p. While Lindsey's husband's observations of her daily activities are indeed largely consistent with Lindsey's own statements, the ALJ explains why he does not fully credit those statements. For these reasons, the ALJ did not err.

## CONCLUSION

Although Lindsey argues the ALJ erred in his RFC assessment, I find the ALJ's decision is supported by substantial evidence. Thus, the Commissioner's decision is affirmed and the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 25th day of February, 2021.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge

9

Case 2:19-cv-01459-NJ   Filed 02/25/21   Page 9 of 9   Document 20